**WILLIAM M. NARUS, CAB #243633**
Acting United States Attorney
**M. ALEX DELORENZO, OSB #203641**
m.alex.delorenzo-lawley@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1108
      For Plaintiff United States of America

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>ROBIN ANN DAVIS-BELL,<br><br>      Debtor. | Case No. 24-33517-thp7<br><br>Adv. Proc.<br><br>COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF THE DEBTS OF ROBIN ANN DAVIS-BELL TO THE UNITED STATES OF AMERICA |
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>vs.<br><br>ROBIN ANN DAVIS-BELL,<br><br>      Defendant. | |

Comes now the Plaintiff, the United States of America (hereinafter, the "Plaintiff" or "United States"), by and through its counsel of record, and for its complaint for a determination of the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), and (6), alleges as follows:

### I.    JURISDICTION AND VENUE

    1.      This action is brought under Federal Rule of Bankruptcy Procedure 4007, 7001(f) and 11 U.S.C. § 523 to determine the dischargeability of certain debt.

    2.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 2201, 1345, and 1334.

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

4.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determination as to dischargeability of particular debt(s)) and (O) (other proceedings) and seeks a determination that indebtedness is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (nondischargeability for money debts obtained by "false pretenses, a false representation, or actual fraud"), 11 U.S.C. § 523(a)(4) (nondischargeability for fraud or as the result of embezzlement), and 11 U.S.C. § 523(a)(6)(nondischargeability for "willful and malicious injury by the debtor to another entity or the property of another entity").

5.      Debtor voluntarily filed the underlying case under Chapter 7 of the Bankruptcy Code on December 31, 2024.

6.      Pursuant to FRBP 7008, the United States consents to entry of final orders or judgment by the bankruptcy court.

## II.    PARTIES

7.      The Plaintiff is the United States of America.

8.      The Debtor and Defendant, Robin Ann Davis-Bell ("Defendant"), is an individual residing in the State of Oregon at 5424 Washington Court, Lake Oswego, Oregon 97035.

## III.    STATUTORY BACKGROUND

9.      In enacting the Small Business Act, Congress declared that "the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns" in order to preserve the system of free competitive enterprise that is essential to the economic well-being and security of the Nation. 15 U.S.C. § 631(a).

10.     To promote that important national objective, Congress created the Small Business Administration ("SBA"), under the management of a single Administrator. 15 U.S.C. § 633(a), (b)(1).

The SBA Administrator possesses extraordinarily broad powers under section 7(a) of the Small Business Act to provide a wide variety of technical, managerial, and financial assistance to small business concerns. 15 U.S.C. § 636(a) (describing a variety of general small business loans the Administrator is "authorized" and "empowered" to make); *see also* 13 C.F.R. § 120.1.

11.     In the performance of these authorized functions, the SBA Administrator is further empowered to "make such rules and regulations as he [or she] deems necessary to carry out the authority vested in him [or her]," and in addition to "take any and all actions . . . [that] he [or she] determines . . . are necessary or desirable in making loans." 15 U.S.C. § 634(b)(6), (7).

12.     The Economic Injury Disaster Loan ("EIDL") program is an SBA program that provides low-interest financing to eligible small businesses, renters, and homeowners in regions affected by declared disaster.

13.     In response to the global COVID-19 public health emergency, Congress passed the Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020. Pub. L. No. 116-123, 134 Stat. 146 (Mar. 6, 2020). Pursuant thereto, coronavirus was deemed to be a disaster for which the SBA could provide economic assistance through the EIDL program. *Id.*

14.     On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). Among other things, the CARES Act appropriated additional funds and expanded eligibility requirements for the EIDL program. *Id.*

15.     The EIDL program has allowed the SBA to provide expeditious relief to America's small businesses to curtail the deleterious effects of the coronavirus pandemic. Towards that end, the SBA offered low-interest, fixed-rate, long-term loans to small businesses that provided borrowers with working capital to meet ordinary and necessary operating expenses.

IV.    **FACTS**

    a.    <u>SBA EIDL Funds</u>

16.    On May 28, 2020, Defendant, through SubFecta LLC ("SubFecta"), a business co-owned by Defendant and Leslie Drentlaw ("Drentlaw"), entered into an EIDL Loan Authorization and Agreement with the SBA, authorizing a loan of $150,000 to SubFecta. *See* Exhibit 1, SubFecta Articles of Organization; Exhibit 2, SubFecta Loan Documents.

17.    On July 29, 2021, Defendant and Drentlaw, through SubFecta, entered into an amended EIDL Loan Authorization and Agreement with the SBA, authorizing an additional loan of $350,000 to SubFecta, resulting in a total loan of $500,000 (the "Loan"). *See* Exhibit 2.

18.    Defendant and Drentlaw each certified in the Amended Loan Authorization and Agreement that "[u]nder penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency." *Id.* at p. 7.

19.    Defendant further certified that she would cause SubFecta to use "all the proceeds of this Loan solely as working capital to alleviate economic injury caused by the disaster occurring in the month of January 31, 2020 and continuing thereafter…." *Id.* at p. 3.

20.    Defendant and Drentlaw each individually guaranteed the Loan on July 29, 2021. *Id* at pp. 22-25.

    b.    <u>Change of Ownership for Business with Existing EIDL</u>

21.    According to the Application for Consent to Change in Ownership ("Application"), on March 5, 2022, Defendant assumed full ownership interest in SubFecta. *See* Exhibit 3, Application for Consent to Change in Ownership.

22.     Defendant certified in the Application that Drentlaw would sell her 50% ownership to Defendant, resulting in "Robin Ann Davis Bell taking over 100% ownership of SubFecta LLC as of March 5, 2022." *Id.*

23.     Defendant certified in the Application that the balance of the EIDL was $500,000.00. *Id.*

24.     The Application was never processed by SBA.

c.   Payment of Debts to CapTen Enterprises Following Receipt of EIDL Funds

25.     At the 11 U.S.C. § 341(a) meeting of creditors on February 5, 2025, Defendant testified that in March 2022, she, as sole shareholder of CapTen Enterprises, Inc. ("CapTen," another entity owned by Defendant), wanted to buy four Subway stores (the "Subway Stores") located near Bend, Oregon. *See* Exhibit 4, Oregon Secretary of State Business Filing for CapTen; Exhibit 5, CapTen Loan Documents.

26.     Defendant further stated that a balloon payment of $350,000 was due in October 2022, to purchase the Subway Stores.

27.     Defendant stated that CapTen did not itself have sufficient funds to purchase the Subway Stores. To cover the balance, Defendant testified that she transferred the $350,000 EIDL proceeds from SubFecta's account to CapTen's account.

28.     In support of these statements, at the § 341(a) meeting on November 26, 2024, before the Creditors of both SubFecta and CapTen, the Defendant testified that in October 2022, SubFecta loaned the $350,000 EIDL proceeds to CapTen, without any loan agreement or repayment plan established between SubFecta and CapTen.

29.     At the § 341(a) meeting held on February 5, 2025, Defendant testified that the revenue from the purchased Subway Stores did not flow to SubFecta but instead went directly to CapTen.

Defendant stated there was no payment of money from CapTen to SubFecta to compensate it for receiving the benefit of SubFecta's EIDL funds.

30.     At the § 341(a) meeting on November 26, 2024, the Defendant stated that SubFecta made monthly payments toward the EIDL balance, again without any reimbursement from CapTen.

31.     At Defendant's § 341(a) meeting on February 5, 2025, Defendant testified that SubFecta continued making those monthly payments until it became insolvent and subsequently filed for bankruptcy.

32.     On June 27, 2025, SBA issued a letter to SubFecta and Defendant notifying them of its preliminary determination that the EIDL funds noted above were misused and that misuse of EIDL proceeds subjects the borrower and/or guarantor to liability for 1.5 times the loan amount under 13 C.F.R. § 123.9(a). The letter provides SubFecta and Defendant 30 days to contest the determination. As of the filing of this Complaint, that response period has not yet lapsed. *See* Exhibit 6, Misuse of Proceeds Letter.

33.     As of July 7, 2025, the outstanding debt the Defendant owes to the SBA on her personal guaranty from the SubFecta loan is $539,904.01. This balance does not yet include the misuse of proceeds penalty value as Defendant still has time to respond to that preliminary determination.

## V.     CLAIMS FOR RELIEF

*FIRST CAUSE OF ACTION – THE SBA LOAN DEBT IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(2)(A)*

34.     The United States realleges and incorporates by reference the allegations in paragraphs 1 through 33 as if fully set forth herein.

35.     Under 11 U.S.C. § 523(a)(2)(A), "a discharge under section 727 […] of this title does not discharge an individual debtor from any debt – for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – (A) false pretenses, a false representation,

or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

36.    Plaintiff alleges that Defendant's debt to the United States is nondischargeable because the Defendant made false and fraudulent statements to the SBA to induce the SBA into providing EIDL funds to the Defendant.

37.    As supported by the statements the Defendant herself made during her § 341(a) meetings, the certifications described above in paragraphs 18 and 19 made under penalty of perjury are materially false statements Defendant made to the SBA with the intent of obtaining EIDL proceeds.

38.    The SBA justifiably relied on the statements made by Defendant in the Amended Loan Authorization and Agreement, including the materially false statements described above in paragraphs 18 and 19.

39.    Defendant's admissions at the § 341(a) meetings confirm that she used $350,000 of the EIDL funds for purposes contrary to the explicit terms of the EIDL loan agreements.

40.    As demonstrated above, Defendant's debts to the United States are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), in that the debt was obtained by false pretenses, false representations, and/or fraud.

41.    SBA has been damaged as a direct and proximate consequence of Defendant's fraud and misrepresentations.

42.    As a result of the misrepresentations and fraud by Defendant, Defendant obtained at least $350,000 in funds from SBA that SBA would not have otherwise authorized or disbursed but for Defendant's fraudulent misrepresentations.

43.    Accordingly, the debt owed to the SBA is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by false pretenses, a false representation, or actual fraud.

*SECOND CAUSE OF ACTION – THE SBA LOAN DEBT IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(4)*

44.     The United States realleges and incorporates by reference the allegations in paragraphs 1 through 43 as if fully set forth herein.

45.     Pursuant to 11 U.S.C. § 523(a)(4), a debt is excepted from discharge if the funds that form the basis for that debt were embezzled by the debtor.

46.     Defendant testified at the §341(a) hearings, as outlined in paragraphs 25-31, that she transferred $350,000 of EIDL proceeds from SubFecta's account to CapTen's account. Defendant then used the funds to purchase four Subway Stores through CapTen.

47.     Defendant took the EIDL proceeds only meant for SubFecta by transferring them to an account for CapTen, a wholly separate entity, and purchasing new Subway Stores for personal gain.

48.     This use of proceeds was in direct contravention of the Loan, which states that "[b]orrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter." *See* Exhibit 2.

49.     Defendant testified that she did not establish a loan agreement or repayment plan between SubFecta and CapTen, did not compensate SubFecta for the funds, and neither she nor CapTen made any of the SBA loan payments for SubFecta.

50.     SubFecta filed for bankruptcy under Chapter 7 of the Bankruptcy Code on September 27, 2024. *See* Case No. 24-32687-thp7.

51.     The Trustee filed a Notice of Intent to Abandon on February 19, 2025. *See* ECF Doc. 22 in Case No. 24-32687-thp7.

52.     The Trustee intends to abandon "[a]ll restaurant equipment and furnishings," and notes that "[t]he equipment is subject to creditor liens that exceed the value of the equipment." *Id.*

53.     As a result of Defendant's fraudulent actions and embezzlement, SubFecta's debt to the SBA, as identified in its schedules, has been directed to CapTen, solely for CapTen's benefit, leaving SubFecta without any funds to repay the SBA. As SubFecta filed for bankruptcy under Chapter 7 of the Bankruptcy Code, no payments or surrender of assets will be made to the SBA because of Defendant's siphoning of funds to CapTen. *See* ECF Doc. 8 in Case No. 24-32687-thp7.

54.     SBA suffered damages as a direct and proximate result of the fraud and embezzlement by the Defendant.

55.     Accordingly, the debt owed to the SBA by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as the loans forming the basis of the debt were obtained by the Defendant's fraud and embezzlement.

*THIRD CAUSE OF ACTION – THE SBA LOAN DEBT IS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(6)*

56.     The United States realleges and incorporates by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     Pursuant to 11 U.S.C. § 523(a)(6), a debt is excepted from discharge for "willful and malicious injury by the debtor to another entity or the property of another entity."

58.     On May 29, 2020, Defendant, through CapTen, entered into an EIDL Loan Authorization and Agreement with the SBA, authorizing a loan of $150,000. *See* Exhibit 5.

59.     On May 28, 2020, Defendant, through SubFecta, entered into an EIDL Loan Authorization and Agreement with the SBA, authorizing a loan of $150,000.  *See* Exhibit 2.

60.     On July 29, 2021, Defendant, through SubFecta, entered into an amended EIDL Loan Authorization and Agreement with the SBA, authorizing an additional loan of $350,000 to SubFecta, resulting in a total loan of $500,000. *Id.*

61.     SBA provided EIDL loans to SubFecta and CapTen to help the businesses recover

from the economic injury caused by the COVID-19 emergency. *See* Exhibits 2 and 5.

62.     Instead, Defendant used the SubFecta funds—not to help SubFecta recover—but to transfer those funds to an entirely separate entity, CapTen, to purchase additional businesses. These acquisitions resulted in additional assets for CapTen, while depriving SubFecta of the benefit of EIDL proceeds to maintain its business.

63.     The Defendant willfully and maliciously orchestrated, developed, expanded, and perpetuated a fraudulent scheme to obtain an EIDL loan from SBA on behalf of SubFecta to receive disbursement of $500,000.00 of EIDL proceeds.  The Defendant, acting through her business SubFecta, made materially false misrepresentations to induce SBA to approve SubFecta for these EIDL funds. The Defendant then systematically moved the EIDL funds from the business that had a guarantee attached to its EIDL funds, SubFecta, to the business that did not have a personal guaranty, CapTen. The Defendant's misrepresentations were knowingly and fraudulently made to SBA to disburse $500,000.00 of EIDL proceeds for the Defendant's benefit.

64.     In other words, Defendant created a scheme whereby SubFecta incurred the liability for the loans made to it by the SBA and alone made payments on those loans, which the Defendant then moved to CapTen to purchase assets that only benefitted CapTen, financially crippling SubFecta, and by extension, its creditors, which includes the SBA.

65.     SBA suffered damages as a direct and proximate result of the willful and malicious actions of the Defendant.

66.     Accordingly, the debt owed to the United States by the Defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as the debt is one for willful and malicious injury by the Defendant to the United States or property belonging to the United States.

///

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, the United States prays for judgment against Defendant as follows:

67.    With respect to the first cause of action, that Defendant's debt to the SBA be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

68.    With respect to the second cause of action, that Defendant's debt to the SBA be excepted from discharge under 11 U.S.C. § 523(a)(4).

69.    With respect to the third cause of action, that Defendant's debt to the SBA be excepted from discharge under 11 U.S.C. § 523(a)(6).

70.    For all costs of suit and for such other relief as the Court deems just and proper.

DATED:    July 7, 2025

Respectfully submitted,

**WILLIAM M. NARUS, CAB #243633**
United States Attorney
District of Oregon

s/ M. Alex DeLorenzo
**M. ALEX DELORENZO, OSB #203641**
m.alex.delorenzo-lawley@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1108

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2025, a copy of the foregoing COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF THE DEBTS OF ROBIN ANN DAVIS-BELL TO THE UNITED STATES OF AMERICA was served by certified and first-class mail, postage prepaid, upon:

Robin Ann Davis-Bell
5424 Washington Court
Lake Oswego, OR 97035

Via first-class mail, postage prepaid, upon:

Michael D. O'Brien
Michael D. O'Brien & Associates PC
12909 SW 68th Pkwy, Ste 160
Portland, OR 97223

And electronically by ECF upon:

US Trustee, Portland
Kenneth S. Eiler, Trustee

s/ M. Alex DeLorenzo
M. Alex DeLorenzo, OSB #203641
Assistant United States Attorney

# ARTICLES OF ORGANIZATION

Corporation Division
www.filinginoregon.com

**E-FILED**
Feb 16, 2018
**OREGON SECRETARY OF STATE**

**REGISTRY NUMBER**

140967498

**TYPE**

DOMESTIC LIMITED LIABILITY COMPANY

**1. ENTITY NAME**

SUBFECTA LLC

**2. MAILING ADDRESS**

32160 ARMITAGE CT N
WILSONVILLE OR 97070 USA

**3. PRINCIPAL PLACE OF BUSINESS**

450 NW 257TH AVE STE 400
TROUTDALE OR 97060 USA

**4. NAME & ADDRESS OF REGISTERED AGENT**

00329227 - C T CORPORATION SYSTEM

780 COMMERCIAL STREET SE
SUITE 100
SALEM OR 97301 USA

**5. ORGANIZERS**

LESLIE DRENTLAW

32160 ARMITAGE CT N
WILSONVILLE OR 97070 USA

ROBIN ANN DAVIS BELL

5424 WASHINGTON CT
LAKE OSWEGO OR 97035 USA

**6. INDIVIDUALS WITH DIRECT KNOWLEDGE**

LESLIE A DRENTLAW

32160 ARMITAGE CT N
WILSONVILLE OR 97070 USA

ROBIN ANN DAVIS BELL

5424 WASHINGTON CT
LAKE OSWEGO OR 97035 USA

**7. MEMBERS/MANAGERS**

Exhibit 1 - Page 1 of 3     Page 1

Corporation Division
www.filinginoregon.com

**OREGON SECRETARY OF STATE**

**MEMBER**

LESLIE A DRENTLAW

32160 ARMITAGE CT N
WILSONVILLE OR 97070 USA

**MEMBER**

ROBIN ANN DAVIS BELL

5424 WASHINGTON CT
LAKE OSWEGO OR 97035 USA

**8. DURATION**

PERPETUAL

**9. MANAGEMENT**

This Limited Liability Company will be member-managed by one or more members

**10. OPTIONAL PROVISIONS**

The company elects to indemnify its members, managers, employees, agents for liability and related expenses under ORS 63.160 to 63.170.

Exhibit 1 - Page 2 of 3   Page 2



Corporation Division
www.filinginoregon.com

**OREGON SECRETARY OF STATE**

I declare, under penalty of perjury, that this document does not fraudulently conceal, fraudulently obscure, fraudulently alter or otherwise misrepresent the identity of the person or any officers, managers, members or agents of the limited liability company on behalf of which the person signs. This filing has been examined by me and is, to the best of my knowledge and belief, true, correct, and complete. Making false statements in this document is against the law and may be penalized by fines, imprisonment, or both.

By typing my name in the electronic signature field, I am agreeing to conduct business electronically with the State of Oregon. I understand that transactions and/or signatures in records may not be denied legal effect solely because they are conducted, executed, or prepared in electronic form and that if a law requires a record or signature to be in writing, an electronic record or signature satisfies that requirement.

**ELECTRONIC SIGNATURES**

**NAME**

LESLIE A DRENTLAW

**TITLE**

MEMBER

**DATE SIGNED**

02-15-2018

**NAME**

ROBIN ANN DAVIS BELL

**TITLE**

MEMBER

**DATE SIGNED**

02-15-2018

Exhibit 1 - Page 3 of 3      Page 3

# AMENDED LOAN AUTHORIZATION AND AGREEMENT (LA&A)

### *A PROPERLY SIGNED DOCUMENT IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

**<u>CAREFULLY READ THE LA&A</u>:**

This document describes the terms and conditions of your loan. It is your responsibility to comply with <u>ALL</u> the terms and conditions of your loan.

---

**<u>SIGNING THE LA&A</u>:**

All borrowers must sign the LA&A.

- Sign your name *<u>exactly</u>* as it appears on the LA&A. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

*<u>Your signature represents your agreement to comply with the terms and conditions of the loan.</u>*

SBA Loan # ████7803                                                        Application # ████████

**U.S. Small Business Administration**

Economic Injury Disaster Loan

## AMENDED LOAN AUTHORIZATION AND AGREEMENT

Date: 05.28.2020, 07.29.2021 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan or Loan Modification (SBA Loan # ████7803) to SubFecta LLC (Borrower) of 32160 Aritage Ct N Wilsonville Oregon 97070 in the amount of five hundred thousand and 00/100 Dollars ($500,000.00), upon the following conditions:

### PAYMENT

- Installment payments, including principal and interest, of $2,516.00 Monthly, will begin Twenty-four (24) months from the date of the Original Note. The balance of principal and interest will be payable Thirty (30) years from the date of the Original Note.

### INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

### PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

### COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

### GUARANTEE

Borrower will provide the following guarantee(s):

Page 2 of 11

SBA Form 1391 (5-00)                                                                                  Ref 50 30

Exhibit 2 - Page 2 of 25

- Guarantee on SBA Form 2128 of: Leslie Drentlaw (32160 Armitsge Ct N, Wilsonville, OR), Robin Davis-Bell (5424 WASHINGTON CT, LAKE OSWEGO, OR)

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

SBA Form 1391 (5-00)    Ref 50 30

Exhibit 2 - Page 3 of 25

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- For loan amounts of greater than $25,000, within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

<u>LIMITS ON DISTRIBUTION OF ASSETS</u>

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

<u>EQUAL OPPORTUNITY REQUIREMENT</u>

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

<u>DISCLOSURE OF LOBBYING ACTIVITIES</u>

- Borrower agrees to the attached Certification Regarding Lobbying Activities

<u>BORROWER'S CERTIFICATIONS</u>

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application.
  All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

SBA Form 1391 (5-00)                                                                                              Ref 50 30

Exhibit 2 - Page 5 of 25

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

## PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

## RESOLUTION OF BOARD OF DIRECTORS

- Borrower and any business entity guarantor shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**SubFecta LLC**

DocuSigned by:
*Robin Davis-Bell*
3F2C2004864E476...

Date:   07.29.2021

Robin Davis-Bell, Owner/Officer

DocuSigned by:
*Leslie Drentlaw*
6A8CBD8D12B245A...

Date:   07.29.2021

Leslie Drentlaw, Owner/Officer

<u>Note:</u> Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

# CERTIFICATION REGARDING LOBBYING

For loans over $150,000, Congress requires recipients to agree to the following:

1. Appropriated funds may NOT be used for lobbying.

2. Payment of non-federal funds for lobbying must be reported on Form SF-LLL.

3. Language of this certification must be incorporated into all contracts and subcontracts exceeding $100,000.

4. All contractors and subcontractors with contracts exceeding $100,000 are required to certify and disclose accordingly.

SBA Form 1391 (5-00)

Exhibit 2 - Page 8 of 25

# CERTIFICATION REGARDING
# LOBBYING

*Certification for Contracts, Grants, Loans, and Cooperative Agreements*

Borrower and all Guarantors certify, to the best of its, his or her knowledge and belief, that:

(1)   No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)   If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3)   The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and co-operative agreements) and that all sub-recipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000.00 and not more than $100,000.00 for each such failure.

SBA Form 1391 (5-00)

Exhibit 2 - Page 9 of 25



This Statement of Policy is Posted

In Accordance with Regulations of the

# Small Business Administration

This Organization Practices

## Equal Employment Opportunity

**We do not discriminate on the ground of race, color, religion, sex, age, disability or national origin in the hiring, retention, or promotion of employees; nor in determining their rank, or the compensation or fringe benefits paid them.**

This Organization Practices

## Equal Treatment of Clients

**We do not discriminate on the basis of race, color, religion, sex, marital status, disability, age or national origin in services or accommodations offered or provided to our employees, clients or guests.**

**These policies and this notice comply with regulations of the United States Government.**

**Please report violations of this policy to:**

**Administrator**
**Small Business Administration**
**Washington, D.C. 20416**

In order for the public and your employees to know their rights under 13 C.F.R Parts 112, 113, and 117, Small Business Administration Regulations, and to conform with the directions of the Administrator of SBA, this poster must be displayed where it is clearly visible to employees, applicants for employment, and the public.

Failure to display the poster as required in accordance with SBA Regulations may be considered evidence of noncompliance and subject you to the penalties contained in those Regulations.

Page 10 of 11



**Esta Declaración De Principios Se Publica**

**De Acuerdo Con Los Reglamentos De La**

Agencia Federal Para el Desarrollo de la Pequeña Empresa

**Esta Organización Practica**

# Igual Oportunidad De Empleo

**No discriminamos por razón de raza, color, religión, sexo, edad, discapacidad o nacionalidad en el empleo, retención o ascenso de personal ni en la determinación de sus posiciones, salarios o beneficios marginales.**

**Esta Organización Practica**

# Igualdad En El Trato A Su Clientela

**No discriminamos por razón de raza, color, religión, sexo, estado civil, edad, discapacidad o nacionalidad en los servicios o facilidades provistos para nuestros empleados, clientes o visitantes.**

**Estos principios y este aviso cumplen con los reglamentos del Gobierno de los Estados Unidos de América.**

**Favor de informar violaciones a lo aquí indicado a:**

**Administrador**
**Agencia Federal Para el Desarrollo de la**
**Pequeña Empresa**
**Washington, D.C. 20416**

 A fin de que el público y sus empleados conozcan sus derechos según lo expresado en las Secciones 112, 113 y 117 del Código de Regulaciones Federales No. 13, de los Reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa y de acuerdo con las instrucciones del Administrador de dicha agencia,
esta notificación debe fijarse en un lugar claramente visible para los empleados, solicitantes de empleo y público en general. No fijar esta notificación según lo requerido por los reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa, puede ser interpretado como evidencia de falta de cumplimiento de los mismos y conllevará la ejecución de los castigos impuestos en estos reglamentos.

## **MODIFICATION OF NOTE**

**Read this document carefully.**  This is your written promise to repay the loan. This Modification of Note reflects the changes to your loan.

**Loan payments** will be due as stated in the second paragraph.

This document is pre-dated.  **DO NOT CHANGE THE DATE OF THIS DOCUMENT.**

**Sign** your name(s) EXACTLY as it appears. If there is an error in the spelling of your name, please notify this office. Sign on the back or bottom only, as indicated by the signature line.

**Return** the signed original document to SBA.

**Make no corrections** to this document.  Call the SBA office if you find an error.

Exhibit 2 - Page 12 of 25



| U.S. Small Business Administration | **Date: July 29, 2021** |
|---|---|
| **1st Modification of Note** | **Loan Amount: $500,000.00** |
| (SECURED DISASTER LOANS) | **Annual Interest Rate: 3.750%** |

**Application #** ██████          **Loan #** ███ 7803

1. **NOTE:** The "Note" is the SBA note signed by Borrower, dated **May 28, 2020** in the amount of **one hundred and fifty thousand and 00/100 Dollars**, payable to SBA. This 1st Modification of Note modifies certain terms of the Note. The current modifications and any prior modifications to the Note, are disclosed below in Paragraphs 2 and 4.

2. **CURRENT PAYMENT TERMS:** Including terms modified by this agreement, the current payment terms of the 1st Modified Note are: The loan amount is **five hundred thousand.** The interest rate is **3.750%** per year. Payments of **$2,516.00** are due every **MONTH** beginning **Twenty-four (24)** months from the date of the Original Note. All remaining principal and accrued interest is due and payable Thirty (30) years from the date of Original Note.

3. **ADDITIONAL BORROWER: N/A**

4. **PREVIOUS NOTE AND MODIFICATIONS, IF ANY, AND CURRENT MODIFICATION TERMS SUMMARY:** The chart attached hereto and incorporated by reference as Addendum A is a summary of your original Note terms, any previous modifications thereto and this current modification:

5. **EFFECT OF THIS MODIFICATION:** All terms of the Note remain unchanged by this agreement except terms that are expressly modified. This Modification of Note becomes a part of the original Note and has the same effect as if its terms were in the original Note when it was signed.

6. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of the Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

7. **DEFAULT:** Borrower is in default under the Note or any modification to the Note, if Borrower does not make a payment when due under the Note, or if Borrower: **A)** Fails to comply with any provision of the Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay the Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay the Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay the Note.

SBA FORM 2131 (5-00)

Exhibit 2 - Page 13 of 25

8.    **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under the Note; **B)** Collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or, **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

9.    **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Incur expenses to collect amounts due under the Note, enforce the terms of the Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay the Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on the Note.

10.    **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, the Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to the Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.    **GENERAL PROVISIONS: A)** All individuals and entities signing the Note, including this Modification, are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of the Note. **F)** If any part of the Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with the Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer the Note.

12.    **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one half times the proceeds disbursed, in addition to other remedies allowed by law.

13.    **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**SubFecta LLC**

DocuSigned by:

*Robin Davis-Bell*

3F2C2004864E4?6...

Robin Davis-Bell, Owner/Officer

DocuSigned by:

*Leslie Drentlaw*

6A8CBD8D12B245A...

Leslie Drentlaw, Owner/Officer

# Addendum A

| | Date | Note Amount | Interest Rate | Periodic Payment Amounts | Maturity Date |
|---|---|---|---|---|---|
| Original Note | April 17, 2020 | $150,000.00 | 3.750% | $731.00 | May 28, 2050 |
| 1st Modification | May 4, 2021 | $500,000.00 | 3.750% | $2,516.00 | May 28, 2050 |

# AMENDED SECURITY AGREEMENT

<u>Read this document carefully.</u> It grants the SBA a security interest (lien) in all the property described in paragraph 4.

This document is predated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

Exhibit 2 - Page 16 of 25



# U.S. Small Business Administration
## AMENDED SECURITY AGREEMENT

| | |
|---|---|
| SBA Loan #: | ████ 7803 |
| Borrower: | SubFecta LLC |
| Secured Party: | **The Small Business Administration, an Agency of the U.S. Government** |
| Date: | 07.29.2021 |
| Note Amount: | $500,000.00 |

1. **DEFINITIONS.**

    Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2. **GRANT OF SECURITY INTEREST.**

    For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3. **OBLIGATIONS SECURED.**

    This Agreement secures the payment and performance of: (a) all obligations under a Note dated 05.28.2020 and all amendments and modifications thereto, made by SubFecta LLC , made payable to Secured Lender, in the total principal amount of  $500,000.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4. **COLLATERAL DESCRIPTION.**

    The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

SBA Form 1059 (09-19) Previous Editions are obsolete.

Exhibit 2 - Page 17 of 25

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5.      **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.      **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7.      **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8.      **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

SBA Form 1059 (09-19) Previous Editions are obsolete.

Exhibit 2 - Page 18 of 25

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.  **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10. **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11. **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12. **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13. **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Form 1059 (09-19) Previous Editions are obsolete.

Exhibit 2 - Page 19 of 25

14. **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15. **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.

**SubFecta LLC**

*Robin Davis-Bell*
—3F2C2004864E476...

Date: 07.29.2021

Robin Davis-Bell, Owner/Officer

*Leslie Drentlaw*
—6A8CBD8D12B245A...

Date: 07.29.2021

Leslie Drentlaw, Owner/Officer

# **GUARANTEE**

**The Guarantee** is to be signed by the person(s) who is to guarantee your loan.

This document is pre-dated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

Exhibit 2 - Page 21 of 25



# U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
# (DISASTER LOANS)

| | |
|---|---|
| SBA Loan # | ████ 7803 |
| Application # | ████████ |
| Guarantor(s) | Robin Davis-Bell, Leslie Drentlaw |
| Borrower | SubFecta LLC |
| Date | 07.29.2021 |
| Note Amount | $500,000.00 |

1. **GUARANTEE.**

   Guarantor(s) unconditionally guarantee(s) payment to SBA of all amounts owing under the Note and any modifications of the Note. This Guarantee remains in effect until the Note and any modifications of the Note is paid in full. Guarantor(s) must pay all amounts due under the Note and any modifications of the Note when SBA makes written demand upon Guarantor(s). SBA is not required to seek payment from any other source before demanding payment from Guarantor(s).

2. **NOTE.**

   The "Note" is the promissory note dated 05.28.2020 and any modifications thereto in the total principal amount of **five hundred thousand  and 00/100 Dollars ($500,000.00**.) from Borrower to SBA. It includes any assumption, renewal, substitution, modifications or replacement of the Note.

3. **DEFINITIONS.**

   "Collateral" means property, if any, taken as security for payment of the Note and any modifications of the Note or any guarantee of the Note.
   "Loan" means the loan evidenced by the Note and any modifications of the Note.
   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor(s) or any other guarantor, or anyone who pledges Collateral.
   "SBA" means the Small Business Administration, an Agency of the United States of America.

4. **SBA'S GENERAL POWERS.**

SBA may take any of the following actions at any time, without notice, without Guarantor(s)' consent, and without making demand upon Guarantor(s):

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note and any modifications of the Note;
B.  Refrain from taking any action on the Note and any modifications of the Note, the Collateral, or any guarantee;
C.  Release any Borrower or any guarantor of the Note and any modifications of the Note;
D.  Compromise or settle with the Borrower or any guarantor of the Note and any modifications of the Note;
E.  Substitute or release any of the Collateral, whether or not SBA receives anything in return;
F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G.  Bid or buy at any sale of Collateral by SBA or any other lienholder, at any price SBA chooses; and
H.  Exercise any rights it has, including those in the Note and any modifications of the Note and other Loan Documents.
   These actions will not release or reduce the obligations of Guarantor(s) or create any rights or claims against SBA.

5. **FEDERAL LAW.**

When SBA is the holder, the Note and any modifications of the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor(s) may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR(S) WAIVE(S).**

To the extent permitted by law,

I.    Guarantor(s) waive(s) all rights to:
   1)  Require presentment, protest, or demand upon Borrower;
   2)  Redeem any Collateral before or after SBA disposes of it;
   3)  Have any disposition of Collateral advertised; and
   4)  Require a valuation of Collateral before or after SBA disposes of it.
J.  Guarantor(s) waive(s) any notice of:
   1)  Any default under the Note and/or any modifications of the Note;
   2)  Presentment, dishonor, protest, or demand;
   3)  Execution of the Note and/or any modifications of the Note;
   4)  Any action or inaction on the Note and/or any modifications of the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
   5)  Any change in the financial condition or business operations of Borrower or any guarantor(s);
   6)  Any changes in the terms of the Note and/or any modifications of the Note or other Loan Documents, except increases in the amounts due under the Note and/or any modifications of the Note; and
   7)  The time or place of any sale or other disposition of Collateral.
K.  Guarantor(s) waive(s) defenses based upon any claim that
   1)  SBA failed to obtain any guarantee;
   2)  SBA failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
   3)  SBA or others improperly valued or inspected the Collateral;
   4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)  SBA impaired the Collateral;
6)  SBA did not dispose of any of the Collateral;
7)  SBA did not conduct a commercially reasonable sale;
8)  SBA did not obtain the fair market value of the Collateral;
9)  SBA did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10)  The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11)  SBA made errors or omissions in Loan Documents or administration of the Loan;
12)  SBA did not seek payment from the Borrower, any other guarantor(s), or any Collateral before demanding payment from Guarantor(s);
13)  SBA impaired Guarantor(s)' suretyship rights;
14)  SBA modified the Note terms, other than to increase amounts due under the Note and/or any modifications of the Note. If SBA modifies the Note to increase the amounts due under the Note without Guarantor(s)' consent, Guarantor(s) will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15)  Borrower has avoided liability on the Note and/or any modifications of the Note; or
16)  SBA has taken an action allowed under the Note and/or any modifications of the Note, this Guarantee, or other Loan Documents.

## 7.  DUTIES AS TO COLLATERAL.

Guarantor(s) will preserve the Collateral, if any, pledged by Guarantor(s) to secure this Guarantee. SBA has no duty to preserve or dispose of any Collateral.

## 8.  SUCCESSORS AND ASSIGNS.

Under this Guarantee, Guarantor(s) include(s) successors, and SBA includes successors and assigns.

## 9.  GENERAL PROVISIONS.

L.  ENFORCEMENT EXPENSES. Guarantor(s) promise(s) to pay all expenses SBA incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

M.  SUBROGRATION RIGHT. Guarantor(s) has/have no subrogation rights as to the Note or the Collateral until the Note or any modifications of the Note is/are paid in full.

N.  JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor(s) is/are jointly and severally liable.

O.  DOCUMENT SIGNING. Guarantor(s) must sign all documents necessary at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral.

P.  FINANCIAL STATEMENTS. Guarantor(s) must give SBA financial statements as SBA requires.

Q.  SBA'S RIGHTS CUMULATIVE, NOT WAIVED. SBA may exercise any of its rights separately or together, as many times as it chooses. SBA may delay or forgo enforcing any of its rights without losing or impairing any of them.

R.  ORAL STATEMENTS NOT BINDING. Guarantor(s) may not use an oral statement to contradict or alter the written terms of the Note and/or any modifications of the Note or this Guarantee, or to raise a defense to this Guarantee.

S.  SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

T.    CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by SBA as to the Loan.

10.    **GUARANTOR(S) ACKNOWLEDGMENT OF TERMS.**

Guarantor(s) acknowledge(s) that Guarantor(s) has/have read and understands the significance of all terms of the Loan Authorization Agreement, Note and/or any modifications of the Note, this Guarantee, including all waivers, and certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

11.    **GUARANTOR(S) NAME(S) AND SIGNATURE(S).**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

DocuSigned by:

*Robin Davis-Bell*

3F2C2004864E476...

Robin Davis-Bell, individually

GUARANTOR:

DocuSigned by:

*Leslie Drentlaw*

6A8CBD8D12B245A...

Leslie Drentlaw, individually

Page 5 of 5

SBA FORM 2128

Exhibit 2 - Page 25 of 25

 **U.S. Small Business Administration**

# Application for Consent to Change in Ownership
### (Business with Existing EIDL)

1.  **BUSINESS NAME** (as listed on the SBA Loan):
    **SubFecta LLC**

2.  **SELECT BUSINESS TYPE:**
    **Sole Proprietorship**

3.  **SBA LOAN NUMBER:**
    **7803**

4.  **IN WHICH STATE(S) IS THE BUSINESS CURRENTLY OPERATIONAL?**
    **Oregon**

5.  **PROVIDE A DETAILED NARRATIVE REGARDING THE REQUEST:**

    Robin Ann Davis Bell requested that Leslie Ann Drentlaw sell her 50% ownership to Robin Ann Davis Bell. Leslie Ann Drentlaw agreed to the sale. We are submitting the change of ownership request due to Robin Ann Davis Bell taking over 100% ownership of SubFecta LLC as of March 5 2022.

    Leslie Ann Drentlaw will no longer have any ownership rights to Subfecta LLC or the bank accounts or other monies including rebates associated with the company effective March 5 2022.Please remove Leslie Ann Drentlaw from all loans including EIDL loan # 7803.

6.  **PROVIDE A LISTING OF ALL CURRENT AND PROPOSED NEW OWNERS OR PRINCIPALS OF THE BUSINESS AND INCLUDE THE PERCENTAGE OF OWNERSHIP FOR EACH.**

    a. Robin Ann Davis Bell    CURRENT    50%    c. Robin Ann Davis Bell    NEW    100%
    b. Leslie A Drentlaw    CURRENT    50%    d.

7.  **DO ANY PROPOSED NEW PRINCIPALS OF THE BUSINESS HAVE AN OUTSTANDING EIDL AND/OR PPP LOAN?**

    ☑ **EIDL:**  LOAN NUMBER: 7803    LOAN BALANCE: 500,000.00

    ☐ **PPP:**  LOAN NUMBER:    LOAN BALANCE:

    ☐ **NO**

8.  ***MONETARY CONSIDERATION*** MAY BE REQUIRED TO APPROVE THIS APPLICATION.

9.  SEND THE FOLLOWING COMPLETED FORMS/DOCUMENTS TO **ElPasoDLSC@sba.gov:***
    - ☐ Application for Consent to Change in Ownership (this form)
    - ☐ Certification of Use of Proceeds (attached)
    - ☐ Copy of the Agreement (Purchase Agreement, Stock Sale Agreement, etc.), if applicable
    - ☐ A Letter signed by all interested individuals detailing the request
    - ☐ Borrower Authorization from the Current Owner(s)/Principal(s) (link to fillable PDF)
    - ☐ SBA Form 912-Statement of Personal History from the Proposed Owner(s)/Principal(s) (link to fillable PDF)
    - ☐ Copies of previous two years Federal Tax Returns for the business
    - ☐ Most recent YTD Profit and Loss Statement of the business
    - ☐ Amended Organizational Documents of the business, if applicable
    - ☐ Proof of Hazard Insurance on the business assets, as required by the SBA Loan Agreement

    *Please note, the above documentation is required; incomplete applications will be returned.*

By signing below, the borrower acknowledges their responsibility for repayment of the debt owed SBA and recognizes that Consent to Change in Ownership *will not* release the Original Borrower(s) and any Guarantor(s) from liability. Please note, businesses that had more than a 50% change of ownership after January 31, 2020 are ineligible for a loan increase unless the change in ownership involved a close family member or partner or the contract for sale existed prior to January 31, 2020.

NAME OF OWNER(S)/PRINCIPAL(S)

Leslie Drentlaw / Robin DavisBell

SIGNATURE OF OWNER(S)/PRINCIPAL(S)

NAME OF PROPOSED OWNER(S)/PRINCIPAL(S)

Robin Davis Bell

SIGNATURE OF PROPOSED OWNER(S)/PRINCIPAL(S)

Application for Consent to Change in Ownership 07/19/2021   V1.6

Exhibit 3 - Page 1 of 1

# Business Registry Business Name Search

## Business Entity Data

03-18-2025
15:08

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 1315202-98 | DBC | ACT | OREGON | 04-17-2017 | 04-17-2025 | **YES** |
| **Entity Name** | CAPTEN ENTERPRISES INC. | | | | | |
| **Foreign Name** | | | | | | |

**Online Renewal:**

Renew Online

**Click here to generate and print an annual report.**

## Associated Names

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| **Addr 1** | 5424 WASHINGTON CT | | | |
| **Addr 2** | | | | |
| **CSZ** | LAKE OSWEGO | OR | 97035 | **Country** | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | | **Start Date** | 03-03-2022 | **Resign Date** | |
|---|---|---|---|---|---|---|---|
| **Name** | ANN | | R | BELL | | | |
| **Addr 1** | 5424 WASHINGTON CT | | | | | | |
| **Addr 2** | | | | | | | |
| **CSZ** | LAKE OSWEGO | OR | 97035 | | **Country** | UNITED STATES OF AMERICA | |

| Type | MAL | MAILING ADDRESS | | |
|---|---|---|---|---|
| **Addr 1** | 16869 SW 65TH AVE 303 | | | |
| **Addr 2** | | | | |
| **CSZ** | LAKE OSWEGO | OR | 97035 | **Country** | UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | **Resign Date** | |
|---|---|---|---|---|---|
| **Name** | ANN | | BELL | | |
| **Addr 1** | 5424 WASHINGTON CT | | | | |
| **Addr 2** | | | | | |
| **CSZ** | LAKE OSWEGO | OR | 97035 | **Country** | UNITED STATES OF AMERICA |

Exhibit 4 - Page 1 of 2

| Type | SEC | SECRETARY | | | | Resign Date | |
|------|-----|-----------|--|--|--|-------------|--|
| Name | KATIE | | DAVIS | | | | |
| Addr 1 | 3714 SE MCKENZIE AVE | | | | | | |
| Addr 2 | | | | | | | |
| CSZ | HILLSBORO | OR | 97123 | | Country | UNITED STATES OF AMERICA | |

New Search

# Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|----------------------|-----------|-------------|------------|----------|
| CAPTEN ENTERPRISES INC. | EN | CUR | 04-17-2017 | |

Please read before ordering Copies.

New Search

# Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|-----------------|--------|------------------|----------------|--------|-------------------|--------------|
| 📄 | REINSTATEMENT AMENDED | 06-25-2024 | | FI | | |
| | ADMINISTRATIVE DISSOLUTION | 06-13-2024 | | SYS | | |
| 📄 | ARTICLES OF AMENDMENT | 04-20-2023 | | FI | | |
| 📄 | AMENDED ANNUAL REPORT | 03-13-2023 | | FI | | |
| 📄 | AMENDED ANNUAL REPORT | 03-03-2022 | | FI | Agent | |
| 📄 | AMENDED ANNUAL REPORT | 03-05-2021 | | FI | | |
| 📄 | AMENDED ANNUAL REPORT | 03-04-2020 | | FI | | |
| 📄 | AMENDED ANNUAL REPORT | 03-25-2019 | | FI | | |
| 📄 | AMENDED ANNUAL REPORT | 03-29-2018 | | FI | | |
| 📄 | ARTICLES OF INCORPORATION | 04-17-2017 | | FI | Agent | |

© 2025  Oregon Secretary of State.  All Rights Reserved.

# LOAN AUTHORIZATION AND AGREEMENT (LA&A)

### *A PROPERLY SIGNED DOCUMENT IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

### <u>CAREFULLY READ THE LA&A</u>:

This document describes the terms and conditions of your loan. It is your responsibility to comply with <u>ALL</u> the terms and conditions of your loan.

---

### <u>SIGNING THE LA&A</u>:

All borrowers must sign the LA&A.

- Sign your name *<u>exactly</u>* as it appears on the LA&A. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

*<u>Your signature represents your agreement to comply with the terms and conditions of the loan.</u>*

## U.S. Small Business Administration

Economic Injury Disaster Loan

# LOAN AUTHORIZATION AND AGREEMENT

Date: 05.29.2020 (Effective Date)

On the above date, this Administration (SBA) authorized (under Section 7(b) of the Small Business Act, as amended) a Loan (SBA Loan # ████7807) to CapTen Enterprises Inc (Borrower) of 5424 Washington Ct Lake Oswego Oregon 97035 in the amount of one hundred and fifty thousand and 00/100 Dollars ($150,000.00), upon the following conditions:

## PAYMENT

- Installment payments, including principal and interest, of $731.00 Monthly, will begin Twelve (12) months from the date of the promissory Note. The balance of principal and interest will be payable Thirty (30) years from the date of the promissory Note.

## INTEREST

- Interest will accrue at the rate of 3.75% per annum and will accrue only on funds actually advanced from the date(s) of each advance.

## PAYMENT TERMS

- Each payment will be applied first to interest accrued to the date of receipt of each payment, and the balance, if any, will be applied to principal.

- Each payment will be made when due even if at that time the full amount of the Loan has not yet been advanced or the authorized amount of the Loan has been reduced.

## COLLATERAL

- For loan amounts of greater than $25,000, Borrower hereby grants to SBA, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described herein to secure payment and performance of all debts, liabilities and obligations of Borrower to SBA hereunder without limitation, including but not limited to all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

- For loan amounts of $25,000 or less, SBA is not taking a security interest in any collateral.

SBA Form 1391 (5-00)                                                                    Ref 50 30

Exhibit 5 - Page 2 of 19

## REQUIREMENTS RELATIVE TO COLLATERAL

- Borrower will not sell or transfer any collateral (except normal inventory turnover in the ordinary course of business) described in the "Collateral" paragraph hereof without the prior written consent of SBA.

- Borrower will neither seek nor accept future advances under any superior liens on the collateral securing this Loan without the prior written consent of SBA.

## USE OF LOAN PROCEEDS

- Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

## REQUIREMENTS FOR USE OF LOAN PROCEEDS AND RECEIPTS

- Borrower will obtain and itemize receipts (paid receipts, paid invoices or cancelled checks) and contracts for all Loan funds spent and retain these receipts for 3 years from the date of the final disbursement. Prior to each subsequent disbursement (if any) and whenever requested by SBA, Borrower will submit to SBA such itemization together with copies of the receipts.

- Borrower will not use, directly or indirectly, any portion of the proceeds of this Loan to relocate without the prior written permission of SBA. The law prohibits the use of any portion of the proceeds of this Loan for voluntary relocation from the business area in which the disaster occurred. To request SBA's prior written permission to relocate, Borrower will present to SBA the reasons therefore and a description or address of the relocation site. Determinations of (1) whether a relocation is voluntary or otherwise, and (2) whether any site other than the disaster-affected location is within the business area in which the disaster occurred, will be made solely by SBA.

- Borrower will, to the extent feasible, purchase only American-made equipment and products with the proceeds of this Loan.

- Borrower will make any request for a loan increase for additional disaster-related damages as soon as possible after the need for a loan increase is discovered. The SBA will not consider a request for a loan increase received more than **two (2)** years from the date of loan approval unless, in the sole discretion of the SBA, there are extraordinary and unforeseeable circumstances beyond the control of the borrower.

## DEADLINE FOR RETURN OF LOAN CLOSING DOCUMENTS

- **Borrower will sign and return the loan closing documents to SBA within 2 months of the date of this Loan Authorization and Agreement**. By notifying the Borrower in writing, SBA may cancel this Loan if the Borrower fails to meet this requirement. The Borrower may submit and the SBA may, in its sole discretion, accept documents after 2 months of the date of this Loan Authorization and Agreement.

## COMPENSATION FROM OTHER SOURCES

- Eligibility for this disaster Loan is limited to disaster losses that are not compensated by other sources. Other sources include but are not limited to: (1) proceeds of policies of insurance or other indemnifications, (2) grants or other reimbursement (including loans) from government agencies or private organizations, (3)

claims for civil liability against other individuals, organizations or governmental entities, and (4) salvage (including any sale or re-use) of items of damaged property.

- Borrower will promptly notify SBA of the existence and status of any claim or application for such other compensation, and of the receipt of any such compensation, and Borrower will promptly submit the proceeds of same (not exceeding the outstanding balance of this Loan) to SBA.

- Borrower hereby assigns to SBA the proceeds of any such compensation from other sources and authorizes the payor of same to deliver said proceeds to SBA at such time and place as SBA shall designate.

- SBA will in its sole discretion determine whether any such compensation from other sources is a duplication of benefits. SBA will use the proceeds of any such duplication to reduce the outstanding balance of this Loan, and Borrower agrees that such proceeds will not be applied in lieu of scheduled payments.

## DUTY TO MAINTAIN HAZARD INSURANCE

- Within 12 months from the date of this Loan Authorization and Agreement the Borrower will provide proof of an active and in effect hazard insurance policy including fire, lightning, and extended coverage on all items used to secure this loan to at least 80% of the insurable value. Borrower will not cancel such coverage and will maintain such coverage throughout the entire term of this Loan. **BORROWER MAY NOT BE ELIGIBLE FOR EITHER ANY FUTURE DISASTER ASSISTANCE OR SBA FINANCIAL ASSISTANCE IF THIS INSURANCE IS NOT MAINTAINED AS STIPULATED HEREIN THROUGHOUT THE ENTIRE TERM OF THIS LOAN.** Please submit proof of insurance to: U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

## BOOKS AND RECORDS

- Borrower will maintain current and proper books of account in a manner satisfactory to SBA for the most recent 5 years until 3 years after the date of maturity, including extensions, or the date this Loan is paid in full, whichever occurs first. Such books will include Borrower's financial and operating statements, insurance policies, tax returns and related filings, records of earnings distributed and dividends paid and records of compensation to officers, directors, holders of 10% or more of Borrower's capital stock, members, partners and proprietors.

- Borrower authorizes SBA to make or cause to be made, at Borrower's expense and in such a manner and at such times as SBA may require: (1) inspections and audits of any books, records and paper in the custody or control of Borrower or others relating to Borrower's financial or business conditions, including the making of copies thereof and extracts therefrom, and (2) inspections and appraisals of any of Borrower's assets.

- Borrower will furnish to SBA, not later than 3 months following the expiration of Borrower's fiscal year and in such form as SBA may require, Borrower's financial statements.

- Upon written request of SBA, Borrower will accompany such statements with an 'Accountant's Review Report' prepared by an independent public accountant at Borrower's expense.

- Borrower authorizes all Federal, State and municipal authorities to furnish reports of examination, records and other information relating to the conditions and affairs of Borrower and any desired information from such reports, returns, files, and records of such authorities upon request of SBA.

## LIMITS ON DISTRIBUTION OF ASSETS

- Borrower will not, without the prior written consent of SBA, make any distribution of Borrower's assets, or give any preferential treatment, make any advance, directly or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by Borrower, or any other company.

## EQUAL OPPORTUNITY REQUIREMENT

- If Borrower has or intends to have employees, Borrower will post SBA Form 722, Equal Opportunity Poster (copy attached), in Borrower's place of business where it will be clearly visible to employees, applicants for employment, and the general public.

## DISCLOSURE OF LOBBYING ACTIVITIES

- Borrower agrees to the attached Certification Regarding Lobbying Activities

## BORROWER'S CERTIFICATIONS

Borrower certifies that:

- There has been no substantial adverse change in Borrower's financial condition (and organization, in case of a business borrower) since the date of the application for this Loan. (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, arrest or conviction of felony, etc.)

- No fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on SBA Form 5 Business Disaster Loan Application'; SBA Form 3501 COVID-19 Economic Injury Disaster Loan Application; or SBA Form 159, 'Compensation Agreement'. All fees not approved by SBA are prohibited.

- All representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan.

- No claim or application for any other compensation for disaster losses has been submitted to or requested of any source, and no such other compensation has been received, other than that which Borrower has fully disclosed to SBA.

- Neither the Borrower nor, if the Borrower is a business, any principal who owns at least 50% of the Borrower, is delinquent more than 60 days under the terms of any: (a) administrative order; (b) court order; or (c) repayment agreement that requires payment of child support.

- Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application. All fees not approved by SBA are prohibited. If an Applicant chooses to employ an Agent, the compensation an Agent charges to and that is paid by the Applicant must bear a necessary and reasonable relationship to the services actually performed and must be comparable to those charged by other Agents in the geographical area. Compensation cannot be contingent on loan approval. In addition, compensation must not include any expenses which are deemed by SBA to be unreasonable for services actually performed or expenses actually incurred. Compensation must not include

SBA Form 1391 (5-00)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Ref 50 30

Exhibit 5 - Page 5 of 19

charges prohibited in 13 CFR 103 or SOP 50-30, Appendix 1. **If the compensation exceeds $500 for a disaster home loan or $2,500 for a disaster business loan, Borrower must fill out the Compensation Agreement Form 159D which will be provided for Borrower upon request or can be found on the SBA website.**

- Borrower certifies, to the best of its, his or her knowledge and belief, that the certifications and representations in the attached Certification Regarding Lobbying are true, correct and complete and are offered to induce SBA to make this Loan.

## CIVIL AND CRIMINAL PENALTIES

- Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RESULT OF VIOLATION OF THIS LOAN AUTHORIZATION AND AGREEMENT

- If Borrower violates any of the terms or conditions of this Loan Authorization and Agreement, the Loan will be in default and SBA may declare all or any part of the indebtedness immediately due and payable. SBA's failure to exercise its rights under this paragraph will not constitute a waiver.

- A default (or any violation of any of the terms and conditions) of any SBA Loan(s) to Borrower and/or its affiliates will be considered a default of all such Loan(s).

## DISBURSEMENT OF THE LOAN

- Disbursements will be made by and at the discretion of SBA Counsel, in accordance with this Loan Authorization and Agreement and the general requirements of SBA.

- Disbursements may be made in increments as needed.

- Other conditions may be imposed by SBA pursuant to general requirements of SBA.

- Disbursement may be withheld if, in SBA's sole discretion, there has been an adverse change in Borrower's financial condition or in any other material fact represented in the Loan application, or if Borrower fails to meet any of the terms or conditions of this Loan Authorization and Agreement.

- **NO DISBURSEMENT WILL BE MADE LATER THAN 6 MONTHS FROM THE DATE OF THIS LOAN AUTHORIZATION AND AGREEMENT UNLESS SBA, IN ITS SOLE DISCRETION, EXTENDS THIS DISBURSEMENT PERIOD.**

PARTIES AFFECTED

- This Loan Authorization and Agreement will be binding upon Borrower and Borrower's successors and assigns and will inure to the benefit of SBA and its successors and assigns.

RESOLUTION OF BOARD OF DIRECTORS

- Borrower shall, within 180 days of receiving any disbursement of this Loan, submit the appropriate SBA Certificate and/or Resolution to the U.S. Small Business Administration, Office of Disaster Assistance, 14925 Kingsport Rd, Fort Worth, TX. 76155.

ENFORCEABILITY

- This Loan Authorization and Agreement is legally binding, enforceable and approved upon Borrower's signature, the SBA's approval and the Loan Proceeds being issued to Borrower by a government issued check or by electronic debit of the Loan Proceeds to Borrower' banking account provided by Borrower in application for this Loan.

*James E. Rivera*

James E. Rivera
Associate Administrator
U.S. Small Business Administration

The undersigned agree(s) to be bound by the terms and conditions herein during the term of this Loan, and further agree(s) that no provision stated herein will be waived without prior written consent of SBA. **Under penalty of perjury of the United States of America, I hereby certify that I am authorized to apply for and obtain a disaster loan on behalf of Borrower, in connection with the effects of the COVID-19 emergency.**

**CapTen Enterprises Inc**

DocuSigned by:
*Robin Davis-Bell*
8E32E67461474DB...

Date: ___05.29.2020___

Robin Davis-Bell, Owner/Officer

Note: Corporate Borrowers must execute Loan Authorization and Agreement in corporate name, by a duly authorized officer. Partnership Borrowers must execute in firm name, together with signature of a general partner. Limited Liability entities must execute in the entity name by the signature of the authorized managing person.

SBA Form 1391 (5-00)                                                                                          Ref 50 30

Exhibit 5 - Page 7 of 19

# CERTIFICATION REGARDING LOBBYING

For loans over $150,000, Congress requires recipients to agree to the following:

1. Appropriated funds may NOT be used for lobbying.

2. Payment of non-federal funds for lobbying must be reported on Form SF-LLL.

3. Language of this certification must be incorporated into all contracts and subcontracts exceeding $100,000.

4. All contractors and subcontractors with contracts exceeding $100,000 are required to certify and disclose accordingly.

SBA Form 1391 (5-00)

Exhibit 5 - Page 8 of 19

# CERTIFICATION REGARDING LOBBYING

*Certification for Contracts, Grants, Loans, and Cooperative Agreements*

Borrower and all Guarantors (if any) certify, to the best of its, his or her knowledge and belief, that:

(1)   No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2)   If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal loan, the undersigned shall complete and submit Standard Form LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3)   The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and co-operative agreements) and that all sub-recipients shall certify and disclose accordingly.

This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000.00 and not more than $100,000.00 for each such failure.

SBA Form 1391 (5-00)

Exhibit 5 - Page 9 of 19



This Statement of Policy is Posted

In Accordance with Regulations of the

# Small Business Administration

This Organization Practices

## Equal Employment Opportunity

**We do not discriminate on the ground of race, color, religion, sex, age, disability or national origin in the hiring, retention, or promotion of employees; nor in determining their rank, or the compensation or fringe benefits paid them.**

This Organization Practices

## Equal Treatment of Clients

**We do not discriminate on the basis of race, color, religion, sex, marital status, disability, age or national origin in services or accommodations offered or provided to our employees, clients or guests.**

**These policies and this notice comply with regulations of the United States Government.**

**Please report violations of this policy to:**

**Administrator
Small Business Administration
Washington, D.C. 20416**

In order for the public and your employees to know their rights under 13 C.F.R Parts 112, 113, and 117, Small Business Administration Regulations, and to conform with the directions of the Administrator of SBA, this poster must be displayed where it is clearly visible to employees, applicants for employment, and the public.

Failure to display the poster as required in accordance with SBA Regulations may be considered evidence of noncompliance and subject you to the penalties contained in those Regulations.

SBA FORM 722 (10-02) REF: SOP 9030    PREVIOUS EDITIONS ARE OBSOLETE

U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346

This form was electronically produced by Elite Federal Inc.

Exhibit 5 - Page 10 of 19

Federal Recycling Program    Printed on Recycled Paper



**Esta Declaración De Principios Se Publica**

**De Acuerdo Con Los Reglamentos De La**

Agencia Federal Para el Desarrollo de la Pequeña Empresa

**Esta Organización Practica**

# Igual Oportunidad De Empleo

**No discriminamos por razón de raza, color, religión, sexo, edad, discapacidad o nacionalidad en el empleo, retención o ascenso de personal ni en la determinación de sus posiciones, salarios o beneficios marginales.**

**Esta Organización Practica**

# Igualdad En El Trato A Su Clientela

**No discriminamos por razón de raza, color, religión, sexo, estado civil, edad, discapacidad o nacionalidad en los servicios o facilidades provistos para nuestros empleados, clientes o visitantes.**

**Estos principios y este aviso cumplen con los reglamentos del Gobierno de los Estados Unidos de América.**

**Favor de informar violaciones a lo aquí indicado a:**

**Administrador**
**Agencia Federal Para el Desarrollo de la**
**Pequeña Empresa**
**Washington, D.C. 20416**

A fin de que el público y sus empleados conozcan sus derechos según lo expresado en las Secciones 112, 113 y 117 del Código de Regulaciaones Federales No. 13, de los Reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa y de acuerdo con las instrucciones del Administrador de dicha agencia,
esta notificación debe fijarse en un lugar claramente visible para los empleados, solicitantes de empleo y público en general. No fijar esta notificación según lo requerido por los reglamentos de la Agencia Federal Para el Desarrollo de la Pequeña Empresa, puede ser interpretado como evidencia de falta de cumplimiento de los mismos y conllevará la ejecución de los castigos impuestos en estos reglamentos.

SBA FORM 722 (10-02) REF: SOP 9030    PREVIOUS EDITIONS ARE OBSOLETE

U.S. GOVERNMENT PRINTING OFFICE: 1994 0- 153-346

This form was electronically produced by Elite Federal Inc.

Exhibit 5 - Page 11 of 19

Federal Recycling Program    Printed on Recycled Paper

# NOTE

## *A PROPERLY SIGNED NOTE IS REQUIRED <u>PRIOR</u> TO ANY DISBURSEMENT*

---

**<u>CAREFULLY READ THE NOTE</u>:** It is your promise to repay the loan.

- The Note is pre-dated. **DO NOT CHANGE THE DATE OF THE NOTE.**
- <u>**LOAN PAYMENTS**</u> will be due as stated in the Note.
- **ANY CORRECTIONS OR UNAUTHORIZED MARKS MAY VOID THIS DOCUMENT.**

---

**<u>SIGNING THE NOTE</u>:** All borrowers must sign the Note.

- Sign your name *exactly* as it appears on the Note. If typed incorrectly, you should sign with the correct spelling.
- If your middle initial appears on the signature line, sign with your middle initial.
- If a suffix appears on the signature line, such as Sr. or Jr., sign with your suffix.
- Corporate Signatories: Authorized representatives should sign the signature page.

Exhibit 5 - Page 12 of 19

| SMALL BUSINESS ADMINISTRATION 1953 logo | U.S. Small Business Administration<br><br>**NOTE**<br><br>(SECURED DISASTER LOANS) | **Date: 05.29.2020** |
|---|---|---|
| | | **Loan Amount: $150,000.00** |
| | | **Annual Interest Rate: 3.75%** |

**SBA Loan #** ███**7807**                                        **Application #** ███████

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **one hundred and fifty thousand  and 00/100 Dollars ($150,000.00)**, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS: A)** "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. **B)** "Guarantor" means each person or entity that signs a guarantee of payment of this Note. **C)** "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$731.00** every **month** beginning **Twelve (12)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor (if any); **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

Exhibit 5 - Page 13 of 19

7. **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **GENERAL PROVISIONS: A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one-half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**CapTen Enterprises Inc**

DocuSigned by:

*Robin Davis-Bell*

8E32E67461474DB...

Robin Davis-Bell, Owner/Officer

# SECURITY AGREEMENT

<u>Read this document carefully.</u> It grants the SBA a security interest (lien) in all the property described in paragraph 4.

This document is predated. DO NOT CHANGE THE DATE ON THIS DOCUMENT.

Exhibit 5 - Page 15 of 19



## U.S. Small Business Administration
# SECURITY AGREEMENT

| | |
|---|---|
| **SBA Loan #:** | ██████7807 |
| **Borrower:** | CapTen Enterprises Inc |
| **Secured Party:** | **The Small Business Administration, an Agency of the U.S. Government** |
| **Date:** | 05.29.2020 |
| **Note Amount:** | $150,000.00 |

1.    **DEFINITIONS.**

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC"). "SBA" means the Small Business Administration, an Agency of the U.S. Government.

2.    **GRANT OF SECURITY INTEREST.**

For value received, the Borrower grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

3.    **OBLIGATIONS SECURED.**

This Agreement secures the payment and performance of: (a) all obligations under a Note dated 05.29.2020, made by CapTen Enterprises Inc , made payable to Secured Lender, in the amount of $150,000.00 ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Borrower in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

4.    **COLLATERAL DESCRIPTION.**

The Collateral in which this security interest is granted includes the following property that Borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: all tangible

SBA Form 1059 (09-19) Previous Editions are obsolete.

Exhibit 5 - Page 16 of 19

and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

5.  **RESTRICTIONS ON COLLATERAL TRANSFER.**

Borrower will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Borrower's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Borrower may sell inventory in the ordinary course of business on customary terms. Borrower may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

6.  **MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.**

Borrower must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Borrower hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Borrower must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes, judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Borrower hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Borrower's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

7.  **CHANGES TO BORROWER'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.**

Borrower must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions: (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name. Borrower will pay for the preparation and filing of all documents Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

8.  **PERFECTION OF SECURITY INTEREST.**

Borrower consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Borrower must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Borrower will pay the filing and recording costs of any documents relating to Secured Party's security interest. Borrower ratifies all previous filings and recordings, including financing statements and

Exhibit 5 - Page 17 of 19

notations on certificates of title. Borrower will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

9.    **DEFAULT.**

Borrower is in default under this Agreement if: (a) Borrower fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Borrower makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Borrower must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Borrower or the Collateral is located. Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Borrower waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

10.   **FEDERAL RIGHTS.**

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Borrower may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

11.   **GOVERNING LAW.**

Unless SBA is the holder of the Note, in which case federal law will govern, Borrower and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Borrower is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

12.   **SECURED PARTY RIGHTS.**

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

13.   **SEVERABILITY.**

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

SBA Form 1059 (09-19) Previous Editions are obsolete.

Exhibit 5 - Page 18 of 19

14.    **BORROWER CERTIFICATIONS.**

Borrower certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Borrower's name and not in the name of any other organization or individual; (c) Borrower has the legal authority to grant the security interest in the Collateral; (d) Borrower's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; (g) Borrower has read and understands the meaning and effect of all terms of this Agreement.

15.    **BORROWER NAME(S) AND SIGNATURE(S).**

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Borrower under this Agreement.


**CapTen Enterprises Inc**

DocuSigned by:

*Robin Davis-Bell*

8E32E67461474DB...

Date:    05.29.2020

Robin  Davis-Bell, Owner/Officer



**U.S. SMALL BUSINESS ADMINISTRATION**
**Capital Access**
**COVID EIDL Servicing Center**
**14925 Kingsport Road**
**Fort Worth, Texas 76155**

**(800) 659-2955**
**For Relay**
**Service Dial**
**7-1-1**

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED
AND ELECTRONIC MAIL TO: ███████████

June 27, 2025

To:    SubFecta LLC
32160 Armitage Ct N
Wilsonville, OR, 97070

SubFecta LLC
5424 WASHINGTON CT
LAKE OSWEGO, OR 97035

Ann Robin Davis-Bell
5424 WASHINGTON CT
LAKE OSWEGO, OR 97035

Re:    SBA Economic Injury Disaster Loan No. ████7803 (SubFecta LLC) – Misapplication of Proceeds
U.S. Bankruptcy Court, District of Oregon, Case No. 24-32687

Dear SubFecta LLC and Ann Robin Davis-Bell:

SBA has learned that SubFecta LLC ("Borrower") and/or Ann Robin Davis-Bell (sometimes referred to as "Ms. Davis-Bell" or "co-guarantor Davis-Bell" or "Debtor") (both collectively referred to as "you" or "your") may have misapplied/misused the loan proceeds from your SBA Economic Injury Disaster Loan ("EIDL" or "disaster loan") authorized under Section 7(b) of the Small Business Act.

A borrower must use its disaster loan proceeds solely in accordance with the Use of Loan Proceeds section of the Loan Authorization and Agreement. Ms. Davis-Bell and co-owner Leslie Drentlaw, on behalf of Borrower, each executed an Amended Loan Authorization and Agreement and Amended Note, dated July 29, 2021, to which Borrower agreed to be bound by the terms and conditions therein and the Uses of Loan Proceeds as follows:

> Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and for loans of more than $25,000 to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

1

Exhibit 6 - Page 1 of 3

Likewise, also on July 29, 2021, Ms. Davis-Bell and Ms. Drentlaw each executed, in their Individual capacities, an Unconditional Guarantee for Borrower's EIDL loan stating, they each "unconditionally guarantee(s) payment to SBA of all amounts owing under the Note and any modifications to the Note."

Despite the quoted language of the foregoing Use of Proceeds section of the Amended Loan Authorization and Agreement, and in an apparent breach of the EIDL terms, evidence presented in the bankruptcy case pending in the U.S. Bankruptcy Court, District of Oregon, Case No. 24-32687, indicates that Debtor and Co-Guarantor Davis-Bell caused some or all the EIDL proceeds to be used for a purpose contrary to the Loan Authorization and Agreement and not used as working capital. Specifically, Debtor's testimony during the 341a Meetings of Creditors held on November 26, 2024 (US Bankruptcy Court for the District of Oregon Case No. 24-32687) and on February 5, 2025 (US Bankruptcy Court for the District of Oregon Case No. 24-33517), Davis-Bell indicates she caused loan funds intended to be used as working capital for SubFecta LLC to be diverted to a different company, CapTen Enterprises, Inc., and may have been used to fund the start-ups of three separate Subway locations.

Misapplication of loan proceeds is a violation of the Federal Regulations and the terms of Borrower's disaster loan. Whoever wrongfully misapplies the proceeds of a disaster loan authorized under Section 7(b) will be liable to SBA for one and one-half times the proceeds disbursed to the borrower as of the date SBA learns of its wrongful misapplication. Wrongful misapplication means the willful use of any disaster loan proceeds without SBA approval contrary to the Loan Authorization. If a borrower fails to use disaster loan proceeds for authorized purposes for 60 days or more after receiving a loan disbursement check, such non-use also is considered a wrongful misapplication of the proceeds. 13 C.F.R. § 123.9(a); 15 U.S.C. § 636(b).

Therefore, SBA may find Borrower and/or Debtor liable to SBA for one and one-half times the proceeds disbursed to the Borrower, in the total amount of $750,000.00 (calculated as $500,000.00 principal disbursed to Borrower X 1.5 = $750,000.00).

**SBA recognizes that the co-guarantor Davis Bell is the debtor in a pending bankruptcy case and, accordingly, this letter is for informational purposes only. This letter is not intended as an attempt to collect a debt or as an act to collect or recover all or any portion of the debt from the borrower/guarantor or the bankruptcy estate, except by proof of claim or other action taken in the bankruptcy proceedings.**

**You are hereby given 30 days from the date of this letter** to submit to SBA evidence that you have not misapplied the disaster loan proceeds or that you have corrected any such misapplication. Additional time to respond may be granted, but only if the request is in writing and supported by a good reason. Any failure to respond in time will be considered an admission that you misapplied the disaster loan proceeds. If SBA finds a wrongful misapplication, and if permitted by bankruptcy law (as applicable), SBA may cancel any undisbursed disaster loan proceeds, call the loan, and begin enforcement measures to collect your outstanding loan balance and the civil penalty against you. 13 C.F.R. § 123.9(b).

You may submit any evidence to John Hubbard, Supervisory Attorney Advisor, with a cc: to me, Michael F. Burchfiel, Supervisory Attorney Advisor at the SBA, COVID EIDL Servicing Center, 14925 Kingsport Rd., Fort Worth, Texas 76155, or via email to John.Hubbard@sba.gov , with a cc: to Michael.Burchfiel@sba.gov .

Sincerely,

MICHAEL
BURCHFIEL

Digitally signed by MICHAEL
BURCHFIEL
Date: 2025.06.27 17:46:23 -05'00'

Michael Burchfiel
Supervisory Attorney Advisor

cc:     Bradley Laughlin, Debtor's Counsel via email to blaughlin@olsendaines.com
        Matthew Koos, SBA Office of General Counsel via email to Matthew.Koos@sba.gov
        Wesley Nell, Office of General Counsel via email to wesley.nell@sba.gov